# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO GASTELUM,<br><br>    Plaintiff,<br><br>    v.<br><br>TC HERITAGE INN 2 OF BAKERSFIELD LLC, dba Home 2 Suites by Hilton Bakersfield,<br><br>    Defendant. | Case No.: 1:21-cv-1230 JLT BAK (SAB)<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(B)(1) (Doc. 5)<br><br>ORDER GRANTING PLAINTIFF LEAVE TO AMEND |

Fernando Gastelum asserts the Home 2 Suites by Hilton Bakersfield violated the Americans with Disabilities Act and California law by not having accessible features. (*See generally* Doc. 25.) Defendants seek dismissal of the Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing Gastelum lacks standing to pursue his claims and the Court lacks jurisdiction. (Doc. 5.)

The Court finds the matter is suitable for decision without oral arguments, and no hearing will be set pursuant to Local Rule 230(g). For the reasons set forth below, Defendant's motion to dismiss is **GRANTED**, and the complaint is dismissed with leave to amend.

I.      **Background and Procedural History**

Fernando Gastelum reports he is "missing a leg and use[s] a wheelchair for mobility." (Doc. 1 at 1, ¶ 1.) He reports that on July 1, 2021, he booked an accessible room at the hotel located at 8227

1

Brimhall Road in Bakersfield, California. (*Id.*, ¶ 3.) According to Gastelum, when he got to the hotel, he "noted that it was not compliant with the Americans with Disabilities act and the California's civil rights laws." (*Id.*, ¶ 4.) Specifically, Gastelum alleged:

> a. There was no marked access aisle for passenger loading zone. This condition makes it more difficult for me to enter or exit the lobby with my wheelchair because non-disabled guests park there.
>
> b. There were unsecured carpets. This condition makes it more difficult for me to freely navigate my wheelchair over uneven ground.
>
> c. Reach ranges for the toaster and iron were greater than 48 inches high. This condition makes it more difficult for me to reach them from the wheelchair.
>
> d. Numerous doors require greater than 5 lbs of force to open. This condition makes it more difficult for me to push my wheelchair through the door.
>
> e. No access aisle in passenger loading zone. This condition impedes my access to the loading zone.

(*Id.* at 1-2, ¶ 4.) Thus, Gastelum asserts he "was denied equal access to the hotel by defendant not complying with the ADA and California's civil rights laws as stated." (*Id.* at 2, ¶ 5.) Further, he reports he "will not want to revisit the Hotel because it is not compliant with the Americans with Disabilities Act and the California's civil rights laws and California disabled person's laws." (*Id.*, ¶ 6.)

Defendant filed the motion to dismiss for failure lack of standing and subject matter jurisdiction on September 9, 2021.[1] (Doc. 5.) Gastelum filed his opposition to the motion on September 13, 2020. (Docs. 6-7.) Defendant did not file a brief in reply.

**II.     The Americans with Disabilities Act**

Title III of the ADA prohibits discrimination against persons with disabilities in places of public accommodation and provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The ADA requires business facilities be "readily accessible to and usable by individuals with disabilities," unless it would be

---

[1] As the parties were informed on August 16, 2021, the Eastern District of California has been in a state of judicial emergency while this motion was pending resolution. (*See* Doc. 3-3 at 1.) The action was assigned to the undersigned in January 2022. (*See* Doc. 11.)

2

"structurally impracticable." 42 U.S.C. § 12183(a)(1); *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011). The Ninth Circuit observed, "In general, a facility is readily accessible to and usable by individuals with disabilities if it meets the requirements promulgated by the Attorney General in the 'ADA Accessibility Guidelines,' or the 'ADAAG.'" *Oliver*, 654 F.3d at 905. These standards are codified at 28 C.F.R. Pt. 36, Appendix A, and are "essentially an encyclopedia of design standards." *See id.*

For purposes of Title III, discrimination also includes "a failure to remove architectural barriers … in existing facilities … where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). Thus, the Ninth Circuit found:

> To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability.

*Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). A plaintiff need not show intentional discrimination to establish an ADA violation. *Lentini v. California Ctr. for the Arts, Escondido*, 370 F.3d 837, 846 (9th Cir. 2004).

### III.     Motions to Dismiss under Rule 12(b)(1)

The district court is a court of limited jurisdiction and is empowered only to hear disputes "authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Exxon Mobil Corp v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Federal courts are "presumed to lack jurisdiction in a particular case, unless the contrary affirmatively appears." *A-Z Int'l. v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003). Thus, a plaintiff carries the burden of demonstrating the Court has subject matter jurisdiction. *Kokkonen*, 511 U.S. at 377 (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)); *Vacek v. United States Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006).

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may challenge a claim for relief for lack of subject matter jurisdiction. A motion to dismiss under Rule 12(b)(1) "may either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction in fact." *Thornhill Pub. Co., Inc. v. Gen. Tel. & Electronics*

*Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (citing *Land v. Dollar*, 330 U.S. 731, 735 (1947)).  Thus, "[a] jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).  The Ninth Circuit explained:

> In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1038 (9th Cir. 2004).  On a motion to dismiss under Rule 12(b)(1), the standards that must be applied by the Court vary according to the nature of the jurisdictional challenge.

If a defendant presents a *facial* challenge to the Court's jurisdiction, the Court must presume the truth of the Plaintiff's factual allegations "and draw all reasonable inferences in his favor." *Doe v. Holy*, 557 F.3d 1066, 1073 (9th Cir. 2009); *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003), *cert. denied*, 541 U.S. 1009 (2004).  The Court should not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  However, the Court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment" when resolving a facial attack.  *Safe Air*, 373 F.3d at 1039.

On the other hand, if a defendant presents a *factual* challenge to the Court's jurisdiction, the Court "may review any evidence, such as affidavits and testimony." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988), *cert. denied*, 489 U.S. 1052 (1989); *Warren*, 328 F.3d at 1139. The Ninth Circuit explained: "Faced with a factual attack on subject matter jurisdiction, 'the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56.  No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Thornhill Pub. Co.*, 594 F.2d at 734 (quoting *Mortenson v. First Fed. Sav. & Loan Assoc.*, 549 F.2d 884, 891 (1977)).  If a moving party presents a factual attack motion, "the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage*, 343 F.3d at 1039 n.2

1  (citing *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)); *see also Assoc. of Am. Med.*
2  *Colleges v. United States*, 217 F.3d 770, 778-79 (9th Cir. 2000) (same).  Thus, the burden of proof
3  remains with a plaintiff, who has "an affirmative obligation to support jurisdictional allegations with
4  proof."  *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 614 (9th Cir. 2016).
5  **IV.     Request for Judicial Notice**
6        The Court may take judicial notice of a fact that "is not subject to reasonable dispute because it
7  (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily
8  determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201. "A
9  court shall take judicial notice if requested by a party and supplied with the necessary information."
10 Fed. R. Evid. 201(c)(2).
11       Defendant requests the Court take judicial notice of: (1) "a spreadsheet downloaded from
12 PACER showing Plaintiff's cases filed in the Ninth Circuit and a separate list of cases filed in the
13 Eastern District of California; (2) "complaints filed by Plaintiff against hotels in Bakersfield, CA
14 arising from his visit to Bakersfield between June 30 and July 4, 2021;" and (3) a video of Gastelum
15 walking with a cane into the reception area at the hotel.  (Doc. 5-3 at 2; Doc. 5-1 at 11, n.4.)
16     **A.     PACER records**
17       The federal judiciary's Public Access to Court Electronic Records system, commonly known as
18 "PACER," is a "court-generated database that provides public access to court electronic records."
19 *Moore v. Saniefar*, 2016 WL 2764768, at *2, n.2 (E.D. Cal. May 12, 2016).  The PACER system is a
20 source for which the accuracy cannot reasonably be questioned, and judicial notice may be taken of
21 "court records available to the public through the PACER system via the internet."  *Delano Farms Co.*
22 *v. Cal. Table Grape*, 546 F.Supp.2d 859, 927, n.5 (E.D. Cal. 2008).
23       The Court may take judicial notice of the lists of actions filed by Gastelum within the Ninth
24 Circuit— including the case numbers, the filing dates, and the district in which each action was filed—
25 as the information was generated from the PACER system, which may not be questioned.  *See, e.g.,*
26 *Delano Farms Co.*  546 F.Supp.2d at 927, n.5; *Reyn's Pasta Bella, LLC v. Visa USA*, Inc., 442 F.3d
27 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of filings from other federal court proceedings as
28 matters of public record).  Therefore, the request for judicial notice is granted.

### B. Surveillance videos

Defendant provided a links to "surveillance videos" posted on YouTube, which Defendant reports show "Gastelum walking into Defendant's hotel" and "walking up to the Front Desk of Defendant's Hotel." (Doc. 5-1 at 6.) Defendant requests the Court take judicial notice of these videos. (*Id.* at 11, n.4.) However, the argument presented related to the propriety of judicial notice for the videos clearly relates to another action and a different plaintiff, whose videos were "aired by the news station and published online." (*See id.*)

Notably, courts have declined to take notice of videos offered related to the disability of a plaintiff, "because the question of disability is a fact subject to reasonable dispute." *See, e.g., Strojnik v. Azul Hosp. Group*, 2019 WL 6467494, at *2 (E.D. Cal. Dec. 2, 2019). In addition, such videos may not meet the requirements for judicial notice, because "[a]nyone may post a video on YouTube, and the internet's status as an open source calls into question the reliability of information that is publicly posted." *Id.*; *see also Strojnik v. Kamla Hotels, Inc.*, 2021 WL 75693, *at 3, n.2 (S.D. Cal. Jan. 21, 2021) (noting there were "reasons to question the accuracy of the source" of a video purporting to show the plaintiff walking into the hotel). As the Court previously observed, "Because YouTube… allows anyone to upload a video, the video itself lacks requisite evidence about its authenticity, authorship, and veracity." *Id.* Further, a defendant's identification of the individual in the video may be questioned. *See Kamla Hotels, Inc.*, 2021 WL 75693, *at 3, n.2 (also observing "the identification of Plaintiff" could be questioned, and declining judicial notice). Accordingly, Defendant's request for judicial notice of the surveillance videos is denied.[2]

### V. Discussion and Analysis

The Ninth Circuit observed, "[b]ecause standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). In the context of a Rule 12(b)(1) motion, a plaintiff has the burden of establishing Article III standing to assert the claims. *Id.* at 1122; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (explaining standing is "the core

---

[2] On the other hand, as discussed below, Gastelum acknowledges in his declaration that he "used [his] prosthesis and a cane to make [his] way to the front door" at the hotel. (Doc. 7 at 4-5, Gastelum Decl. ¶ 12(a), (b).)

6

1  component" of the case-or-controversy requirement under Article III).

2  Defendants argue Gastelum lacks standing to bring a claim under the ADA, and thus contend
3  the Court lacked subject matter jurisdiction. (Doc. 5-1 at 9-23.) Because Defendant presents evidence
4  in support of the motion, Defendant asserts the company "is making a factual attack" as to standing.
5  (*See id.* at 8.) However, Defendant also raises arguments related to the sufficiency of the allegations in
6  the Complaint. (*See, e.g., id.* at 9-11.) Thus, Defendant raises both a factual attack and a facial attack
7  upon Plaintiff's standing.

### A. Gastelum's litigation history

As an initial matter, Defendant contends "Gastelum is a serial, high volume Americans with Disabilities Act plaintiff, who lives in Arizona and who has filed more than 170 ADA lawsuits since 2018." (Doc. 5-1 at 5, citing *Gastelum v. Canyon Hosp. LLC, No.*, 2018 U.S. Dist. LEXIS 87850, at *12 (D. Ariz. May 25, 2018). Defendant observes that Gastelum filed fourteen lawsuits "within a two month period from July 9, 2021 through September 3, 2021." (*Id.*) Further, Defendant notes Gastelum "sued 10 businesses and hotels in the Bakersfield area in one month." (*Id.*)

Significantly, the Ninth Circuit urged courts to exercise caution "before construing a Disability Act Plaintiff's history of litigation against him." *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1174 (9th Cir. 2010). The Court observed that "[f]or the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1062 (9th Cir. 2007). Further, the Court determined "motivation is irrelevant to the question of standing" under the ADA, and ADA testers have standing if they meet the traditional criteria. *Civ. Rights Educ. & Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093, 1098 (9th Cir. 2017). Accordingly, the Court declines to consider the number of actions filed by Gastelum or his particular motivation in visiting Defendant's hotel in evaluating the issue of his standing.

### B. Standing under the ADA

Importantly, "jurisdiction is to be assessed under the facts existing when the complaint is filed." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.4 (1992). Consequently, "[t]he requisite personal

1  interest"—standing—"must exist at the commencement of the litigation." *Friends of the Earth, Inc. v.*
2  *Laidlaw Environmental Servs., Inc.*, 528 U.S. 167, 214 (2000) (citation omitted); *Skaff v. Meridien N.*
3  *Am. Beverly Hills, LLC*, 506 F.3d 832, 850 (9th Cir. 2007) ("Standing is determined at the time of the
4  lawsuit's commencement, and we must consider the facts as they existed at that time the complaint was
5  filed"); *see also Perry v. Village of Arlington Heights,* 186 F.3d 826, 830 (7th Cir. 1999) ("Because
6  standing goes to the jurisdiction of a federal court to hear a particular case, it must exist at the
7  commencement of the suit").

8  To show standing, a plaintiff "must demonstrate that he has suffered an injury-in-fact, that the
9  injury is traceable to the [defendant's] action, and that the injury can be redressed by a favorable
10 decision." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc).  An
11 injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized,
12 and (b) 'actual or imminent' not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560 (omitting
13 internal citations).  An injury is concrete and particularized when a plaintiff suffers discrimination due
14 to architectural barriers at a public accommodation and those barriers have deterred plaintiff from
15 returning.  *Doran v. 7-Eleven*, 524 F.3d 1034, 1041 (9th Cir. 2008).  A plaintiff suffers an "actual and
16 imminent" injury under the ADA when he alleges "(1) that he visited an accommodation in the past;
17 (2) that he was currently deterred from returning to the accommodation because of ADA violations;
18 and (3) that he would return if the ADA violations were remedied." *Id.* (citing *Molski v. Arby's*
19 *Huntington Beach*, 359 F. Supp. 2d 938, 947 (C.D. Cal. 2005)).

20 Furthermore, to establish standing for a claim of injunctive relief, as Gastelum seeks here, he
21 "must demonstrate a 'real and immediate threat of repeated injury' in the future." *Chapman*, 631 F.3d
22 at 946 (quoting *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004)).  The Ninth
23 Circuit recognized a plaintiff seeking injunctive relief under the ADA can show a likelihood of future
24 injury in one of two ways: (1) by showing he "intends to return to a noncompliant accommodation and
25 is therefore likely to reencounter a discriminatory architectural barrier," or (2) by demonstrating
26 "sufficient injury to pursue injunctive relief when discriminatory architectural barriers deter him from
27 returning to a noncompliant accommodation." *Id.* at 950.
28 ///

### C. Disability under the ADA

The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Walking is considered a "major life activit[y]." 42 U.S.C. § 12102(2)(A). Plaintiff is missing part of his left leg and must use either a wheelchair or assistive device for mobility. (Doc. 1 at 1; Doc. 7 at 1-2, ¶¶ 1-4.) Thus, it is indisputable that Plaintiff is disabled within the meaning of the ADA. *See Moore v. Millennium Acquisitions,* 708 Fed. App'x 485, 486 (9th Cir. 2018) (evidence that a plaintiff "physically can walk but chooses to use a wheelchair as a mobility aid does not raise a material factual dispute as to whether [the plaintiff] is disabled under the ADA"); *Lozano v. C.A. Martinez Fam. Ltd. P'ship,* 129 F. Supp. 3d 967, 972 (S.D. Cal. 2015) (a plaintiff who used a wheelchair for mobility was "disabled" under the ADA).

### D. Injury-in-fact

For standing purposes, an ADA plaintiff need only allege sufficient facts to demonstrate that an accessibility barrier "interfere[s] with [his] 'full and equal enjoyment' of the facility" in question. *Chapman*, 631 F.3d at 947 (quoting 42 U.S.C. § 12182(a)). A barrier amounts "to such interference if it affects the plaintiff's full and equal enjoyment of the facility on account of his particular disability." *Id*. The ADA Accessibility Guidelines ("ADAAG") "establish[] the technical standards required for 'full and equal enjoyment.'" *Id*. If a barrier violating the ADAAG standards "relates to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes 'discrimination' under the ADA. That discrimination satisfies the 'injury-in-fact' element." *Id*.

Defendant asserts that Gastelum "has not alleged an injury in fact." (Doc. 5-1 at 9, emphasis omitted.) According to Defendant, Gastelum "fails to allege how any purported violation 'relates to' his own disability." (*Id.*) In addition, Defendant argues there are no barriers at the hotel. (*Id.* at 12.)

#### 1. Barriers that relate to Gastelum's disability

Defendant notes that a plaintiff "cannot merely identify barriers not associated with his particular disability to satisfy Article III standing." (Doc. 5-1 at 9, citing *Chapman*, 631 F.3d at 947.) Defendant contends "each of the four alleged architectural barriers are based on Gastelum allegedly being wheelchair-bound." (Doc. 5-1 at 10.) Defendant argues that because Gastelum did not use his wheelchair at the hotel, Gastelum "has not plead how any alleged barrier… affected him." (*Id.*) In

9

addition, Defendant observes Gastelum did not plead "how his use of a cane…related to any purported barriers." (*Id.*) Consequently, Defendant contends "there is no alleged disability that Gastelum can even tie to any alleged barrier." (*Id.* at 11, emphasis omitted.)

In response, Gastelum reports he owns two wheelchairs: a non-motorized wheelchair and an electric mobility scooter. (Doc. 7 at 2, ¶ 7.) He acknowledges he did not use one of these wheelchairs at the hotel. (Doc. 6 at 2.) According to Gastelum, he sometimes would "use a wheelchair and sometimes … a prosthetic because it is impractical to use a wheelchair where the hotel is not wheelchair friendly, like the hotel in this case." (*Id.*) He explains he had the electric scooter in the vehicle when he arrived at the hotel but believed he "could not unload it without the safety provided by a marked passenger loading zone." (Doc. 7 at 4, ¶ 12(a).) Gastelum also asserts he "could see that the surface mat /carpet on the entry was not stable or firm…" (*Id.*) As a result, Gastelum contends "use of the wheelchair was impeded, and [he] had to resort to the use of [his] prosthesis and a cane." (*Id.*)

Also, Gastelum asserts his need for a cane in the hotel room meant he "could not move the toaster to the lower shelf because that requires use of two hands," as would "removal of the iron from its cradle." (Doc. 7 at 6, ¶ 12(b).) Gastelum maintains the hotel doors requiring more than 5 pounds of opening force also were barriers explaining: "When the opening force is 5 lbs or less, as required, opening a door with just one hand may be possible, but when the opening force is greater than 5 lbs, it requires one hand to turn the handle and the other to push open the door." (*Id.* at 6, ¶12(c).) He asserts doors at the hotel required "the push/pull force of about 20 lbs," and it was not possible for him to open the doors "either from a wheelchair or with one hand when using the prosthetic and a cane." (*Id.*)

Although Gastelum provides information in his opposition and declaration regarding how the encountered barriers related to his disability—including causing his use of a cane at the hotel rather than his electric scooter—these allegations were not included in the complaint, which heavily implied Gastelum was in a wheelchair when he encountered each of the identified barriers. Consequently, it appears leave to amend is appropriate to clarify the how the alleged barriers related to Gastelum's disability.

        2.      <u>Barriers alleged at the hotel</u>

As noted above, Defendant raises both factual and facial attacks as to Gastelum's standing

10

related to the alleged barriers.  To the extent a factual attack is raised, Defendant argues "the alleged barriers do not exist at all." (Doc. 5-1 at 11.)  In support of this assertion, Defendant contends the hotel was certified as "fully compliant with the 2010 ADAAG." (*Id.* at 12.)  Defendant also submitted a declaration from Jennifer Overstreet, with photos of the alleged barriers at the hotel.  (Doc. 5-2.)  Gastelum maintains the barriers identified in his complaint exist.  (*See* Docs. 6, 7.)

### a. Certificate of occupancy

Defendant notes pursuant to California law, a certificate of occupancy is issued after a building official "finds no violations" of California Building Standards, require accessibility that is "not… less than the application and scope" of the requirements of the Americans with Disabilities Act of 1990." (Doc. 5-1 at 15, citing 2019 Cal. Building Standards Code § 111.2; Cal. Gov't Code §§ 4450(c), 4459(c).)  Defendant asserts that "after the completion of construction, the Hotel was inspected by a [Certified Access Specialist], who certified on December 21, 2019 that the Hotel, including the parking and ADA accessible guest rooms, was fully compliant with the 2010 ADAAG." (*Id.*, citing Overstreet Decl. Exh. 5 [Doc. 5-2 at 16].)  According to Defendant, "For that reason alone, this case is completely frivolous . . ." (*Id.*)

Significantly, there is no showing the architectural features evaluated by the Certified Access Specialist ("CASp") in completing the "Architect's Post-Construction ADA Certification Form for New Construction" were the same conditions as those encountered by Plaintiff when he visited the hotel in July 2021.  In addition, it is unclear whether the CASp would consider matters such as unsecured carpets and reach distances for certain amenities in a hotel room.  (*See* Doc. 5-2 at 18.)  As a result, the Court is unable find the "Post-Construction ADA Certification Form" demands a finding that Plaintiff is unable to show he encountered any physical barriers at the hotel.

### b. Passenger loading zone

Gastelum alleges "[t]here was no *marked* access aisle for [the] passenger loading zone." (Doc. 1 at 1, ¶ 4(a), emphasis added.)  However, Plaintiff also alleges there was "[n]o access aisle in [the] passenger loading zone." (Doc. 1 at 2, ¶ 4(e).)

Defendant argues Gastelum is unable to establish standing based upon alleged barriers related to a passenger loading zone because "there is no requirement that a hotel have a passenger loading zone."

(Doc. 5-1 at 13.) Defendant contends the hotel does not have a passenger loading zone, and "there are no signs or design features at the Hotel indicating a passenger loading zone." (*Id.* at 13-14, citing Overstreet Decl. ¶ 4 [Doc. 5-2 at 2].) Specifically, Jennifer Overstreet, General Manager of the Home 2 Suites, asserts the hotel does not have a "loading zone marked with any time (sic) of signage or design elements," and Overstreet attached photos of an accessible ramp and sidewalk. (Doc. 5-2 at 1-2, ¶ 4.) On the other hand, Gastelum maintains in his declaration that the hotel does, in fact, have a passenger loading zone and also provides a photo in support of his assertion. (Doc. 7 at 3-4, ¶ 12; *id.* 11-12, ¶ 23.) Although the quality of the photo renders it difficult to determine whether he photographed the same area as Overstreet, it appears at this juncture there is a factual dispute between the parties as to the presence of a passenger loading zone at the hotel, and such a factual dispute must be resolved in favor of Gastelum as the non-moving party. *See Castillo v. Cartier*, 2018 WL 6603864, at *2 (E.D. Cal. Dec. 14, 2018) (citing *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996)); *see also Brooke v. Suites LP*, 2020 WL 6149963, at *3 (S.D. Cal. Oct. 19, 2020) (noting that in support of a motion under Rule 12(b)(1), the defendant presented evidence from the hotel manager that an area was not a passenger loading zone because there was "no signage or design feature" designating it as such, but finding the matter had to be viewed in favor of the plaintiff, who asserted there was a passenger loading zone).

Nevertheless, Defendant also makes a facial attack, asserting the allegations are insufficient to find Gastelum has standing related to any passenger loading zone barriers. (*See* Doc. 5-1 at 12.) This Court previously found a plaintiff must allege facts to support a conclusion that a path is a "loading zone" within the meaning of the ADAAG, which defines indicates passenger loading zones as areas "specifically designed or designated for passenger loading." *Brooke v. Sai Ashish*, 2021 WL 4804220, at *8 (E.D. Cal. Oc. 14, 2021); *Suites LP*, 2020 WL 6149963, at *3. For example, in *Sai Ashish*, the plaintiff alleged only in her complaint that the "hotel does not have an access aisle, thus constituting a barrier to her access to the hotel lobby." *Id.* The court found Brooke failed "to allege non-conclusory facts showing that the hotel has a passenger loading zone." *Id.* Without such allegations, the Court determined Brooke "has not established that Defendant was required to have an access aisle, and the absence of an ADAAG/ADA Standards violation precludes Plaintiff's ADA claim." *Id.* Similarly, here, Gastelum offers only a conclusory allegation that "[t]here was no marked access aisle for [the]

passenger loading zone." (Doc. 1 at 1, ¶ 4.) Such a statement is insufficient for the Court to find there was, in fact, a passenger loading zone, or that an access aisle was required under the ADAAG. *See Brooke*, 2021 WL 4804220, at *8.

Moreover, the ADAAG requires only that access aisles to passenger loading zones "be marked so as to discourage *parking* in them." *Strojnik v. VY Verasa Commer. Co. LLC*, 2020 U.S. Dist. LEXIS 169026 at *20 (N.D. Cal. Sept. 15, 2020) (citing ADAAG § 503.3.3, emphasis in original). There are no other standards for drop off zones to be marked. *See Strojnik v. Orangewood LLC,* 2020 WL 11192872, at *5 (C.D. Cal. Jan. 22, 2020). There is no requirement for an establishment to have "a sign or some other identification about where to get dropped off" under the ADAAG. *Id.* The Central District observed:

> To the extent Plaintiff is arguing there should be a sign or some other identification about where to get dropped off, such a requirement is not found in the ADAAG. To the extent Plaintiff is arguing that there is no marked access aisle, he has not sufficiently alleged that he needs an access aisle to exit a vehicle.

*Id.* Thus, the court concluded Strojnik did "not sufficiently allege[] a concreate and particularized injury related to a 'marked passenger drop off zone.'" *Id.* The Ninth Circuit affirmed, finding the court properly dismissed the action for lack of standing. *Orangewood*, 829 Fed. App'x at 783. Likewise, due to the minimal allegations in the complaint, it is unclear what signs Gastelum believes were required for the loading zone. Gastelum also fails to allege he was a *passenger* in a vehicle—rather than the driver— when he arrived at Home 2 Suites, and that Gastelum attempted to be dropped off outside the hotel in the alleged loading zone. Thus, the Court finds Gastelum fails to allege facts sufficient to support a conclusion that he encountered barriers related to a passenger loading zone. *See Chapman*, 631 F.3d at 953; *Orangewood*, 2020 WL 11192872, at *5. Accordingly, he fails to show standing based upon these alleged barriers.

### c. Unsecured carpets

Gastelum alleges "[t]here were unsecured carpets" at the hotel in violation of the ADA. (Doc. 1 at 1-2, ¶ 4(b).) Defendant contends the allegations are insufficient because Gastelum "does not identify what carpets he claims were unsecured, what provision of the 2010 ADAAG he claims was violated or even how any purported 'unsecured carpet' was a barrier to him while using a cane." (Doc. 5-1 at 14,

13

citing *Cuadra v. George Brown Sports Club-Palm, Inc.*, 2019 U.S. Dist. LEXIS 70256, at *10-12 (E.D. Cal. Apr. 24, 2019) [failing to identify an ADAAG provision is insufficient].)

This Court previously observed that the ADAAG indicates carpets "used on floor surfaces must be securely attached, with any exposed edges fastened to floor surfaces, and with trim along any exposed edges." *Moore v. Millennium Acquisitions, LLC*, 2016 WL 8730673, at *9 (E.D. Cal. Mar. 4, 2016), citing 28 C.F.R. pt. 36, App. A, § 4.5.3. However, as Defendant argues, Gastelum does not allege any facts related to the location of the "unsecured carpets"—such as whether they were in an area accessible to the public or patrons of the hotel— or how this created a barrier related to his disability while using a cane. Although Gastelum provides additional information in his declaration to oppose dismissal (Doc. 7 at 4), the lack of allegations in his complaint results in the failure to establish standing based upon the alleged barrier.[3]

### d.   Reach ranges

Gastelum alleges "[r]each ranges for the toaster and iron were greater than 48 inches high," and the height "makes it more difficult for [him] to reach them from the wheelchair."[4] (Doc. 1 at 2, ¶ 4(c).) Defendant contends "[n]ot only is Gastelum not in a wheelchair . . ., but the allegation is abjectly false." (Doc. 5-1 at 14, emphasis omitted.) In support of this assertion, Defendant presents photographs that it asserts "show[] the height of the toaster area and iron as less than 34 inches high." (*Id.*, citing Overstreet Decl. ¶¶ 6-7 [Doc. 5-2 at 3, 10-14.) Specifically, Overstreet reported she "took photographs of the areas in [Gastelum's] room that he claimed were too high." (Doc. 5-2 at 3, ¶ 5.) She stated the "height of the counter on which the toaster sits is approximately 34 inches high, not the

---

[3] In his declaration, Gastelum indicates the "surface mat /carpet [at] the entry" of the hotel "was not stable or firm in violation of 201 Standards at 302." (Doc. 7 at 4, ¶12(a).) In addition, he provides a photograph of a "Home 2 Suites" mat inside the building. (*Id.* at 5.) Notably, "[t]he ADAAG specifically refers to carpet and permanent mats, not moveable rubber floor mats." *Crandall v. Starbucks Corp.*, 249 F.Supp.3d 1037 (N.D. Cal. 2017); *see also Wilson v. Norbreck, LLC*, 2005 WL 2439714, at *4-5 (E.D. Cal. Dec. 14, 2005) (indicating the ADAAG has no application to "floor mats"); *White v. Divine Invs., Inc.* 2005 WL 2491543, at *6 (E.D. Cal. Oct. 7, 2005) (finding summary judgment in favor of the defendant on the plaintiff's claim that floor mats were not secured because "mats placed on the linoleum floor [are]… not covered by the ADAAG"). Accordingly, while Gastelum may amend his complaint to allege additional information related to the "unsecured carpeting," if the hotel feature to which he refers is the welcome floor mat, the alleged barrier may not violate the ADAAG.

[4] Having acknowledged that he was not in a wheelchair, Gastelum also asserts that while using a cane, he "could not move the toaster to the lower shelf because that requires use of two hands." (Doc. 7 at 6, ¶ 12(b).) Similarly, he maintains "two hands [are required] to remove the iron from its cradle." (*Id.*)

48 inches that Mr. Gastelum claimed in his Complaint." (*Id.* at 3, ¶ 6, emphasis omitted; *see also id.* at 11-12.) In addition, Ms. Overstreet reports she "took a photograph of the closet where the ironing board is kept, [that] shows that the height of the closet pole, which is higher than the ironing board, is at 48 inches." (*Id.*, ¶ 7; *see also id.* at 14.) She contends that "[t]he iron itself is even lower." (*Id.*)

Gastelum challenges the evidence submitted by Defendant, asserting that the photo provided by Overstreet of the counter in the hotel room shows "the coffee pot which sits on the 34" shelf," rather than the toaster. (Doc. 7 at 12-13, ¶ 24, emphasis omitted.) Gastelum reports the toaster was "located on the shelf above the coffee pot," and provided a photograph that shows the coffee pot and toaster were on different shelves. (*Id.* at 13.) Gastelum also reports that, contrary to Overstreet's statement, the iron was "significantly higher" than the closet pole and provided a photo of the closet space in the hotel, including the pole, iron, and ironing board. (*Id.* at 14, ¶ 25.)

Notably, as Gastelum asserts, it does not appear the toaster was on the shelf measured by Overstreet, and the iron also appears mounted above the horizontal closet pole that was photographed. (*See* Doc. 7 at 12-14.) Thus, the evidence submitted by Defendant does not mandate a determination that Gastelum made "abjectly false" statements related to the reach ranges of the toaster and iron, or that he would be unable to establish standing based upon the alleged barriers. *See Castillo*, 2018 WL 6603864, at *2 (disputes of fact identified with a Rule 12(b)(1) must be resolved in favor of the non-moving party).

### e. Force required for doors

The ADAAG provides standards governing "[d]oors, doorways, and gates that are part of an accessible route." ADAAG § 404.1. In addition, the ADAAG indicates that "[h]andles, pulls, latches, locks, and other operable parts on doors and gates shall comply with 309.4." *Id.* § 404.2.7. That provision, in turn, requires "operable parts" to be operable with only one hand, and require force of 5 pounds maximum to activate. *Id.* § 309.4.

In the complaint, Gastelum alleges that "[n]umerous doors require greater than 5 lbs of force to open." (Doc. 1 at 2, ¶ 4(d).) However, Gastelum does not provide any information regarding the location of the doors he tested and required more than five pounds of force. (*See id.*) Because the Court is unable to determine whether these doors were part of an "accessible route," the allegations are

15

1  insufficient to establish standing related to the force required for the doors.  *See Orangewood,* 2020
2  WL 11192872, at *6 (finding the allegations insufficient to establish standing under the ADA for a
3  claim related to accessible doors where the plaintiff did not "allege exactly which door he is referring
4  to, [or] that the door was part of an accessible route").

### E.     Threat of future harm

Because Gastelum seeks injunctive relief under the ADA, he must additionally establish a "real and immediate threat of repeated injury" or, in other words, that there is "a sufficient likelihood that he will again be wronged in a similar way."  *Fortyune*, 364 F.3d at 1081 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)) (internal quotation marks omitted).  The Ninth Circuit identified two ways an ADA plaintiff may demonstrate a likelihood of future harm: (1) the plaintiff can show "an intent to return to a noncompliant accommodation" when he would be "likely to reencounter a discriminatory architectural barrier" or (2) a plaintiff can show that "he is deterred from visiting a noncompliant public accommodation because he has encountered barriers related to his disability there."  *Chapman*, 631 F.3d at 948-50; *see also Doran,* 524 F.3d at 1040 (discussing deterrence).

In the Complaint, Gastelum states: "I will not want to revisit the Hotel because it is not fully compliant with the Americans with Disabilities Act and California's civil rights laws and California disabled person's law."  (Doc. 1 at 2, ¶ 6.)  Thus, it appears he alleges deterrence to support his likelihood future harm.  This is supported by the opposition, in which Gastelum indicates:

> In my Complaint, I do not use the word "deterred", but instead state that "I will not want to revisit the Hotel because it is not fully compliant with the Americans with Disabilities Act and the California's civil rights laws and California disabled person's laws". Complaint statement of fact no. 6.  Meriam Webster online dictionary defines the term "deter" to mean "to turn aside, discourage, or prevent from acting". https://www.merriam- webster.com/dictionary/deter. My statement is the same as if I said I was "deterred".

(Doc. 7 at 9.)  Defendant argues the facts alleged by Gastelum are insufficient to support a conclusion that he is deterred from returning to the hotel.  (Doc. 5-1 at 19.)

Importantly, "[t]o establish standing based on deterrence, an ADA plaintiff must demonstrate that he would return but for the barrier."  *Feezor v. Sears, Roebuck & Co.*, 608 F. App'x 476, 477 (9th Cir. 2015); *see also Doran*, 524 F.3d at 1041 ("Allegations that a plaintiff has visited a public

16

accommodation on a prior occasion and is currently deterred from visiting that accommodation by accessibility barriers establish that a plaintiff's injury is actual or imminent") (citing *Pickern v. Holiday Quality Foods Inc*., 293 F.3d 1133, 1138 (9th Cir. 2002)). Conclusory allegations of deterrence, however, are insufficient. *Feezor*, 608 Fed. App'x at 477; *see also Strojnik v. Bakersfield Convention Hotel I, LLC*, 436 F. Supp. 3d 1332, 1341 (E.D. Cal. 2020) ("conclusory assertions that an ADA plaintiff … is deterred from returning to a place are insufficient"). A plaintiff must allege more, such as frequency of travel to a region, to support a determination that he is deterred from a return due to the alleged barriers. *See, e.g., Whitaker v. Ramon Bravo, Inc.,* 2021 WL 4133871, at *4 (N.D. Cal. Sept. 10, 2021) (finding a plaintiff sufficiently alleged imminent future injury based on allegations that he is an ADA tester who frequently travels to the Bay Area, including the Redwood City area where the restaurant was located); *Rutherford v. Kelly*, 2021 WL 488342, at *7 (S.D. Cal. Feb. 9, 2021) (finding the plaintiff's status as an ADA tester and past visits to an establishment were relevant to the inquiry for standing purposes). Because Gastelum offers no more than a conclusory statement that he does not want to revisit the hotel due to its alleged failure to comply with the ADA and California law, he fails to allege facts sufficient to support a conclusion that he has standing due to deterrence. *See Feezor*, 608 Fed. App'x at 477; *Bakersfield Convention Hotel I*, 436 F. Supp. 3d at 1341.

### F. Claims under state law

Gastelum alleges the defendant violated "California's civil rights laws and California disabled person's law." (Doc. 1 at 1, ¶ 4.) Thus, it appears Gastelum seeks to state a claim for a violation of California's Unruh Civil Rights Act and California Disabled Persons Act.

Any violation of the ADA also is a violation of California's Unruh Civil Rights Act. Cal. Civ. Code § 51(f); *see also Molski*, 481 F.3d at 731 ("Any violation of the ADA necessarily constitutes a violation of the Unruh Act"). Likewise, the California Disabled Persons Act was "amended to provide that a violation of the ADA constitutes a violation of [its] provisions." *See Pickern v. Best Western Timber Cove Lodge Marina*, 194 F.Supp.2d 1128, 1131 (E.D. Cal. 2002). However, as discussed above, Plaintiff fails to allege facts or present evidence sufficient to challenge the factual attack by Defendant to support the conclusion that he has standing for a claim under the ADA. Accordingly, the Court may decline to exercise supplemental jurisdiction over these claims if the deficiencies identified

are not cured by amendment. *See Sanford v. MemberWorks, Inc*., 625 F.3d 550, 561 (9th Cir. 2010) (quoting 28 U.S.C. § 1367(c)(3)); *see also Strojnik v. Hotel Circle GL Holdings, LLC*, 2019 WL 6212084, at *6 (E.D. Cal. Nov. 21, 2019) (declining to exercise supplemental jurisdiction over the plaintiff's remaining state claims when his ADA claim failed for lack of standing).

## VI.   Leave to Amend

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations, internal quotation marks omitted). When dismissing a complaint, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id*. at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 532 (9th Cir. 2008).

The Court has insufficient information to conclude that amendment is futile due to the sparsity of allegations in the complaint. Amendment would allow Gastelum to clarify how the alleged barriers related to his disability—whether using a cane or a wheelchair— and violated standards under the ADAAG. In addition, leave to amend would permit the Court to determine whether Gastelum may seek injunctive relief under the ADA. Further, it does not appear amendment would cause undue delay at this juncture, and there is no evidence indicating bad faith in filing the action. Accordingly, Gastelum will be given an opportunity to file an amended complaint that cures the deficiencies related to standing identified in this order. *See Strojnik v. Wickstrom Hospitalilty, LLC*, 2020 WL 1467067, at *7 (E.D. Cal. Mar. 25, 2020) (granting leave to amend for the plaintiff to address deficiencies identified related to standing).

An amended complaint must bear the docket number assigned this case and must be labeled "First Amended Complaint." Gastelum is advised that an amended complaint supersedes the original complaint. *Forsyth v. Humana, Inc*., 114 F.3d at 1474; *King v. Atiyeh*, 814 F.2d at 567. Thus, after

the First Amended Complaint is filed, the prior pleadings no longer serve any function in the case. *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967). The amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220. Accordingly, the Court will not again refer to either the prior complaint or the declaration submitted by Gastelum in his opposition to this motion.

## VII.     Conclusion and Order

For the reasons set forth above, the Court **ORDERS**:

1. Defendant's motion to dismiss under Rule 12(b)(1) is **GRANTED**.
2. Plaintiff's complaint (Doc. 1) is **DISMISSED** with leave to amend; and
3. Plaintiff is directed to file a First Amended Complaint within thirty days of the date of service of this order.

**If Plaintiff fails to file an amended complaint, the action will be dismissed for failure to prosecute and failure to obey the Court's order.**

IT IS SO ORDERED.

Dated:   **February 22, 2022**                                  /s/ Jennifer L. Thurston
                                                                                    UNITED STATES DISTRICT JUDGE