1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FERNANDO GASTELUM, | ) Case No.: 1:21-cv-1230 JLT CDB |
| Plaintiff, | ) |
| | ) ORDER DENYING DEFENDANTS' MOTION |
| | ) TO DISMISS PURSUANT TO RULE 12(B)(1) |
| v. | ) |
| | ) (Doc. 16) |
| TC HERITAGE INN 2 OF BAKERSFIELD | ) |
| LLC, dba Home 2 Suites by Hilton Bakersfield, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| _____ | ) |

Fernando Gastelum asserts the Home to Suites by Hilton Bakersfield violated the Americans with Disabilities Act and California law by not having accessible features. (*See generally* Doc. 15.) Defendant seeks dismissal of the Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing Gastelum lacks standing to pursue his claims and the Court lacks jurisdiction. (Doc. 16.) The Court finds the matter is suitable for decision without oral arguments, and no hearing will be set pursuant to Local Rule 230(g). For the reasons set forth below, Defendant's motion to dismiss is **DENIED**.

**I.      Background and Procedural History**

Fernando Gastelum reports he is "missing a leg" and "uses a wheelchair for mobility." (Doc. 15 at 1, ¶ 1.) He reports that "[w]here the locations are not designed for the use of a wheelchair, that is, accessible routes do not provide firm, level surface, or are not designed for persons using a wheelchair,

1

1    [he] must use his prosthetic leg and a cane to move short distances."  (*Id.* at 3-4, ¶ 4.)  Gastelum

2    indicates that "use of the prosthetic leg and cane limits [his] access to a greater degree than the use of a

3    wheelchair," because it "impairs… access to all things requiring a two handed or two legged

4    operations, such as pushing open doors, reaching for items requiring a two handed operation to use and

5    similar." (*Id.*, ¶ 15.)

6           On July 21, 2021, Gastelum visited the Home to Suites by Hilton located at 8227 Brimhall

7    Road in Bakersfield, California ("the Hotel").  (Doc. 15 at 2-3, ¶¶ 3, 13.)  Gastelum reports he went to

8    the Hotel "with the intention to avail himself of their goods or services motivated in part to determine

9    if the Defendant complies with the disability access laws."  (*Id.* at 3, ¶ 13.)  According to Gastelum, he

10   "discovered that the Hotel was not designed for wheelchair use," which required him "to use the

11   prosthetic leg and a cane to move, open doors and reach for items."  (*Id.*, ¶¶ 15, 17.)

12          He alleges he encountered "inaccessible elements at the Hotel," including: (1) a passenger

13   loading zone without a "marked access aisle;" (2) doors that required "greater than 5 lbs to open,"

14   including the doors to his hotel room, on an accessible route, and to the restroom in the pool area; (3)

15   and the reach range for a toaster and iron in the room being "greater than 48 inches high."  (Doc. 15 at

16   3-7, ¶ 17(a)-(e).)  Gastelum acknowledges that he drove to the Hotel but asserts "he could not be a

17   passenger because there was no exclusive access isle (sic) that he could use as a passenger."  (*Id.* at 5,

18   ¶ 17(a).)  He asserts the identified "barriers interfered with [his] full and equal enjoyment of the

19   Hotel."  (*Id.* at 8, ¶ 18.)  Thus, Gastelum contends that "[b]y failing to provide accessible facilities, the

20   defendants denied… [him] full and equal access."  (*Id.*)

21          Gastelum asserts that he "frequently travels to the Bakersfield area where the Hotel is located."

22   (Doc. 15 at 8, ¶ 26.)  According to Gastelum, he "is currently deterred" from returning to the Hotel

23   "because of his knowledge of the existing barriers and his uncertainty about the existence of yet other

24   barriers on the site."  (*Id.*, ¶ 28.)  For example, Gastelum reports he returned to Bakersfield during

25   January 2022 "but declined to stay at the Hotel based on his knowledge that the Hotel was not

26   accessible."  (*Id.*, ¶ 27.)  He contends he "will return to the Hotel to avail himself of its goods and

27   services and to determine compliance with the disability access laws once it is represented to him that

28   the Hotel is accessible."  (*Id.*)

                                                        2

On August 13, 2021, Gastelum initiated this action by filing a complaint.  (Doc. 1.)  The Court dismissed the complaint with leave to amend to cure pleading deficiencies related to standing.  (*See* Doc. 13.)  On March 3, 2022, Gastelum filed his First Amended Complaint, seeking to hold the defendant liable for violations of the Americans with Disabilities Act and California's Unruh Civil Rights Act.  (Doc. 15.)

Defendant now seeks dismissal of the complaint, asserting Gastelum "lacks sufficient Article III standing to bring the claims asserted in the complaint" and "fail[s] to plead violations of the ADA." (Doc. 16 at 2.)  Gastelum filed his opposition to the motion on March 28, 2022 (Doc. 18), to which Defendant filed a reply on April 11, 2022 (Doc. 19).  Gastelum also filed notices of supplemental authority in support of his opposition on July 25, 2022, and December 16, 2022.  (Docs. 21, 26.)

## II.	The Americans with Disabilities Act

Title III of the ADA prohibits discrimination against persons with disabilities and provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).  The ADA requires business facilities be "readily accessible to and usable by individuals with disabilities," unless it would be "structurally impracticable." 42 U.S.C. § 12183(a)(1); *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011).  The Ninth Circuit observed, "In general, a facility is readily accessible to and usable by individuals with disabilities if it meets the requirements promulgated by the Attorney General in the 'ADA Accessibility Guidelines,' or the 'ADAAG.'"  *Oliver*, 654 F.3d at 905.  These standards are codified at 28 C.F.R. Pt. 36, Appendix A, and are "essentially an encyclopedia of design standards."  *See id.*

For purposes of Title III, discrimination also includes "a failure to remove architectural barriers … in existing facilities … where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). Thus, the Ninth Circuit found:

> To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability.

3

1  *Molski v. M.J. Cable, Inc*., 481 F.3d 724, 730 (9th Cir. 2007).  A plaintiff need not show intentional

2  discrimination to establish an ADA violation. *Lentini v. California Ctr. for the Arts, Escondido*, 370

3  F.3d 837, 846 (9th Cir. 2004).

4  **III.     Motions to Dismiss under Rule 12(b)(1)**

5        The district court is a court of limited jurisdiction and is empowered only to hear disputes

6  "authorized by Constitution and statute."  *Kokkonen v. Guardian Life Ins. Co. of Am*., 511 U.S. 375,

7  377 (1994); *Exxon Mobil Corp v. Allapattah Servs., Inc*., 545 U.S. 546, 552 (2005).  Federal courts are

8  "presumed to lack jurisdiction in a particular case, unless the contrary affirmatively appears." *A-Z Int'l.*

9  *v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003).  Thus, a plaintiff carries the burden of demonstrating

10  the Court has subject matter jurisdiction.  *Kokkonen*, 511 U.S. at 377 (citing *McNutt v. General Motors*

11  *Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)); *Vacek v. United States Postal Serv*., 447 F.3d 1248,

12  1250 (9th Cir. 2006).

13        Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may challenge a

14  claim for relief for lack of subject matter jurisdiction.  A motion to dismiss under Rule 12(b)(1) "may

15  either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the

16  existence of subject matter jurisdiction in fact." *Thornhill Pub. Co., Inc. v. Gen. Tel. & Electronics*

17  *Corp*., 594 F.2d 730, 733 (9th Cir. 1979) (citing *Land v. Dollar*, 330 U.S. 731, 735 (1947)).  Thus, "[a]

18  jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by

19  presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc*., 328 F.3d 1136, 1139 (9th Cir.

20  2003) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).  The Ninth Circuit explained:

21              In a facial attack, the challenger asserts that the allegations contained in
              a complaint are insufficient on their face to invoke federal jurisdiction.

22              By contrast, in a factual attack, the challenger disputes the truth of the
              allegations that, by themselves, would otherwise invoke federal

23              jurisdiction.

24  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1038 (9th Cir. 2004).  On a motion to dismiss under

25  Rule 12(b)(1), the standards that must be applied by the Court vary according to the nature of the

26  jurisdictional challenge.

27        If a defendant presents a *facial* challenge to the Court's jurisdiction, the Court must presume

28  the truth of the Plaintiff's factual allegations "and draw all reasonable inferences in his favor."  *Doe v.*

4

1  *Holy*, 557 F.3d 1066, 1073 (9th Cir. 2009); *Savage v. Glendale Union High Sch. Dist. No. 205*, 343

2  F.3d 1036, 1039 n.1 (9th Cir. 2003), *cert. denied*, 541 U.S. 1009 (2004).  The Court should not

3  "assume the truth of legal conclusions merely because they are cast in the form of factual allegations."

4  *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  However, the Court "may review

5  evidence beyond the complaint without converting the motion to dismiss into a motion for summary

6  judgment" when resolving a facial attack.  *Safe Air*, 373 F.3d at 1039.

7         On the other hand, if a defendant presents a *factual* challenge to the Court's jurisdiction, the

8  Court "may review any evidence, such as affidavits and testimony."  *McCarthy v. United States*, 850

9  F.2d 558, 560 (9th Cir. 1988), *cert. denied*, 489 U.S. 1052 (1989); *Warren*, 328 F.3d at 1139.  The

10  Ninth Circuit explained: "Faced with a factual attack on subject matter jurisdiction, 'the trial court may

11  proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56.  No presumptive truthfulness attaches to

12  plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from

13  evaluating for itself the merits of jurisdictional claims.'"  *Thornhill Pub. Co.*, 594 F.2d at 734 (quoting

14  *Mortenson v. First Fed. Sav. & Loan Assoc.*, 549 F.2d 884, 891 (1977)).  If a moving party presents a

15  factual attack motion, "the party opposing the motion must furnish affidavits or other evidence

16  necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage*, 343 F.3d at 1039 n.2

17  (citing *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)); *see also Assoc. of Am. Med.

18  Colleges v. United States*, 217 F.3d 770, 778-79 (9th Cir. 2000) (same).  Thus, the burden of proof

19  remains with a plaintiff, who has "an affirmative obligation to support jurisdictional allegations with

20  proof."  *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 614 (9th Cir. 2016).

21  **IV.     Request for Judicial Notice**

22         The Court may take judicial notice of a fact that "is not subject to reasonable dispute because it

23  (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily

24  determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  "A

25  court shall take judicial notice if requested by a party and supplied with the necessary information."

26  Fed. R. Evid. 201(c)(2).

27         Defendant requests the Court take judicial notice of: (1) "a spreadsheet downloaded from

28  PACER showing Plaintiff's cases filed in the Ninth Circuit and a separate list of cases filed in the

1    Eastern District of California; (2) "complaints filed by Plaintiff against hotels in Bakersfield, CA

2    arising from his visit to Bakersfield between June 30 and July 4, 2021." (Doc. 16-5 at 2.)

3         The federal judiciary's Public Access to Court Electronic Records system, commonly known as

4    "PACER," is a "court-generated database that provides public access to court electronic records."

5    *Moore v. Saniefar*, 2016 WL 2764768, at *2, n.2 (E.D. Cal. May 12, 2016). The PACER system is a

6    source for which the accuracy cannot reasonably be questioned, and judicial notice may be taken of

7    "court records available to the public through the PACER system via the internet." *Delano Farms Co.*

8    *v. Cal. Table Grape*, 546 F.Supp.2d 859, 927, n.5 (E.D. Cal. 2008). Thus, the Court may take judicial

9    notice of the lists of actions filed by Gastelum within the Ninth Circuit— including the case numbers,

10   the filing dates, and the district in which each action was filed—as the information was generated from

11   the PACER system, which may not be questioned. *See, e.g., Delano Farms Co.* 546 F.Supp.2d at 927,

12   n.5; *Reyn's Pasta Bella, LLC v. Visa USA*, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial

13   notice of filings from other federal court proceedings as matters of public record). Further, Gastelum

14   does not dispute the identified information. (*See generally* Doc. 18.) Therefore, the request for judicial

15   notice is granted.

16   **V.    Discussion and Analysis**

17        The Ninth Circuit observed, "[b]ecause standing and ripeness pertain to federal courts' subject

18   matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss." *Chandler v. State*

19   *Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). In the context of a Rule 12(b)(1)

20   motion, a plaintiff has the burden of establishing Article III standing to assert the claims. *Id.* at 1122;

21   *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (explaining standing is "the core

22   component" of the case-or-controversy requirement under Article III).

23        Defendants argue Gastelum lacks standing to bring a claim under the ADA, and thus contend

24   the Court lacked subject matter jurisdiction. (Doc. 16 at 9-26.) Because Defendant presents evidence

25   in support of the motion, Defendant asserts the company "is making a factual attack" as to standing.

26   (*See id.* at 8.) However, Defendant also raises arguments related to the sufficiency of the allegations in

27   the Complaint. (*See, e.g., id.* at 10.) Thus, Defendant raises both a factual attack and a facial attack

28   upon Plaintiff's standing.

1

**A.     Gastelum's litigation history**

As an initial matter, Defendant contends "Gastelum is a serial, high volume Americans with Disabilities Act plaintiff, who lives in Arizona and who has filed more than 170 ADA lawsuits since 2018." (Doc. 16-1 at 5, citing *Gastelum v. Canyon Hosp. LLC, No*., 2018 U.S. Dist. LEXIS 87850, at *12 (D. Ariz. May 25, 2018).) Defendant observes that Gastelum filed fourteen lawsuits "within a two month period from July 9, 2021 through September 3, 2021." (*Id.*) Further, Defendant notes Gastelum "sued 10 businesses and hotels in the Bakersfield area in one month." (*Id.*)

Significantly, the Ninth Circuit urged courts to exercise caution "before construing a Disability Act Plaintiff's history of litigation against him." *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1174 (9th Cir. 2010). The Court observed that "[f]or the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1062 (9th Cir. 2007). Furthermore, the Court determined "motivation is irrelevant to the question of standing" under the ADA, and ADA testers have standing if they meet the traditional criteria. *Civ. Rights Educ. & Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093, 1098 (9th Cir. 2017). Accordingly, the Court declines to consider the number of actions filed by Gastelum or his motivation in visiting Defendant's hotel in evaluating the issue of his standing.

**B.     Standing under the ADA**

Importantly, "jurisdiction is to be assessed under the facts existing when the complaint is filed." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.4 (1992). Consequently, "[t]he requisite personal interest"—standing—"must exist at the commencement of the litigation." *Friends of the Earth, Inc. v. Laidlaw Environmental Servs., Inc*., 528 U.S. 167, 214 (2000) (citation omitted); *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 850 (9th Cir. 2007) ("Standing is determined at the time of the lawsuit's commencement, and we must consider the facts as they existed at that time the complaint was filed"); *see also Perry v. Village of Arlington Heights,* 186 F.3d 826, 830 (7th Cir. 1999) ("Because standing goes to the jurisdiction of a federal court to hear a particular case, it must exist at the commencement of the suit").

1    To show standing, a plaintiff "must demonstrate that he has suffered an injury-in-fact, that the

2    injury is traceable to the [defendant's] action, and that the injury can be redressed by a favorable

3    decision." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc).   An

4    injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized,

5    and (b) 'actual or imminent' not 'conjectural' or 'hypothetical.'"   *Lujan*, 504 U.S. at 560 (omitting

6    internal citations).   An injury is concrete and particularized when a plaintiff suffers discrimination due

7    to architectural barriers at a public accommodation and those barriers deter the plaintiff from

8    returning.   *Doran v. 7-Eleven*, 524 F.3d 1034, 1041 (9th Cir. 2008).   A plaintiff suffers an "actual and

9    imminent" injury under the ADA when he alleges "(1) that he visited an accommodation in the past;

10   (2) that he was currently deterred from returning to the accommodation because of ADA violations;

11   and (3) that he would return if the ADA violations were remedied."   *Id.* (citing *Molski v. Arby's*

12   *Huntington Beach*, 359 F. Supp. 2d 938, 947 (C.D. Cal. 2005)).

13   **C.     Disability under the ADA**

14   The ADA defines a disability as "a physical or mental impairment that substantially limits one

15   or more major life activities."   42 U.S.C. § 12102(1)(A).   Walking is considered a "major life

16   activit[y]."   42 U.S.C. § 12102(2)(A).   Plaintiff is missing part of his leg and must use a wheelchair or

17   other assistive device for mobility.   (Doc. 15 at 1-2, ¶¶ 1-4.)   Thus, it is indisputable that Plaintiff is

18   disabled within the meaning of the ADA.   *See Moore v. Millennium Acquisitions,* 708 Fed. App'x 485,

19   486 (9th Cir. 2018) (evidence that a plaintiff "physically can walk but chooses to use a wheelchair as a

20   mobility aid does not raise a material factual dispute as to whether [the plaintiff] is disabled under the

21   ADA"); *Lozano v. C.A. Martinez Fam. Ltd. P'ship,* 129 F. Supp. 3d 967, 972 (S.D. Cal. 2015) (a

22   plaintiff who used a wheelchair for mobility was "disabled" under the ADA).

23   **D.     Injury-in-fact**

24   For standing purposes, an ADA plaintiff need only allege sufficient facts to demonstrate that an

25   accessibility barrier "interfere[s] with [his] 'full and equal enjoyment' of the facility" in question.

26   *Chapman*, 631 F.3d at 947 (quoting 42 U.S.C. § 12182(a)).   A barrier amounts "to such interference if

27   it affects the plaintiff's full and equal enjoyment of the facility on account of his particular disability."

28   *Id.*   The ADA Accessibility Guidelines ("ADAAG") "establish[] the technical standards required for

'full and equal enjoyment.'"  *Id*.  If a barrier violating the ADAAG standards "relates to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes 'discrimination' under the ADA.  That discrimination satisfies the 'injury-in-fact' element."  *Id*.

Defendant asserts that Gastelum "has not alleged an injury in fact."  (Doc. 16-1 at 10, emphasis omitted.)  Defendant notes a plaintiff "cannot merely identify barriers not associated with his particular disability to satisfy Article III standing."  (*Id.* at 9, citing *Chapman*, 631 F.3d at 947.)  Defendant contends "each of the four alleged architectural barriers are based on Gastelum allegedly being wheelchair-bound."  (*Id.*)  However, Defendant notes Gastelum was not in a wheelchair while at the Hotel.  (*Id.* at 17-18, citing *Strojnik v. Hotel Circle GL Holdings, LLC*, 2019 U.S. Dist. LEXIS 202591, at *7 (E.D. Cal. Nov. 20, 2019).)  According to Defendant, Gastelum "has not pled how his use of a cane … related to any purported barriers, which are at most barriers to someone in a wheelchair, not someone like Gastelum who strode into the Hotel using only a cane."  (*Id.* at 18, citing *O'Campo v. Bed Bath & Beyond of Cal., LLC*, 610 F. App'x 706, 708 (9th Cir. 2015); *Rutherford v. Cesar's Mexican Rest., LLC*, 2019 WL 4193392, at *1 (S.D. Cal. Sept. 3, 2019).)  Consequently, Defendant contends "there is no alleged disability that Gastelum can even tie to any alleged barrier."  (*Id.* at 19, emphasis omitted.)  In addition, Defendant argues there are no barriers at the Hotel.  (*Id.* at 10-17, 19.)

In response, Gastelum contends he "corrected the deficiencies relating to the barriers in his FAC."  (Doc. 18 at 3.)  Gastelum notes in the FAC, he alleged that he did not use his wheelchair because he "discovered that the Hotel is not compliant with the disability access laws" and he "had to use the prosthetic leg and cane to move, open doors and reach for items."  (*Id.*, citing Doc. 15 at 3-8, ¶¶ 17-19.)

### 1.    Legal conclusions

As an initial matter, the Court notes Gastelum's belief that the Hotel was "not complaint with the disability access laws" is a legal conclusion, which is not entitled to the presumption of truth.  *See Anderson v. Rochester- Genesee Reg'l Transp. Auth.,* 337 F.3d 201, 216 (2d Cir. 2003) ("ADA compliance" was a "legal conclusion[]"); *Arroyo v. Denaco, LLC*, 2020 WL 2477682 at *2 (C.D. Cal. Mar. 20, 2020) (identifying accessibility and "in conformance with the ADA standards" as "legal conclusions," not facts).  Accordingly, the Court will disregard such statements.

2.      Passenger loading zone

Section 503 of the ADAAG governs passenger loading zones, and pursuant to Section 503.3, a "passenger loading zone is required to provide an access aisle adjacent to the vehicle pull-up space." *See Brooke v. Sai Ashish*, 2021 WL 4804220, at *8 (E.D. Cal. Oc. 14, 2021).  In addition, Section 503.3.3 provides that "access aisles are required "to be marked so as to discourage parking in them." *Brooke v. Suites LP*, 2020 WL 6149963, n.4 (S.D. Cal. Oct. 19, 2020).  However, Section 503 does not require all places of public accommodation to have such passenger loading zones. *Sai Ashish*, 2021 WL 4804220, at *8; *Suites LP*, 2020 WL 6149963 at *3 (agreeing that "the ADAAG does not require the Hotel to have a passenger loading zone).

Gastelum alleges that "[t]he Hotel has a passenger loading zone, but the loading zone had no marked access aisle."  (Doc. 15 at 4, ¶ 17(a).)  Defendant maintains because there is no passenger loading zone at the Hotel, and even if there is such a loading zone, Gastelum fails to allege facts sufficient to support a conclusion that he suffered an injury-in-fact related to the alleged barrier.

a.      *Presence of a passenger loading zone*

Defendant contends the Hotel does not have a passenger loading zone, and as a result Gastelum is unable to establish standing on such a barrier.  (Doc. 16-1 at 11-13.)  Defendant observes that under the U.S. Access Board Guidelines, a "passenger loading zone" includes:

> Only those areas that are specifically designed or designated for passenger loading are considered "passenger loading zones" under the Standards. This includes those passenger drop-off or pick-up areas commonly found at airports, convention centers, schools, and many hotel entrances that have design features, signs, or markings indicating passenger loading zones. At other locations, compliance is not required even if passenger loading may occasionally occur, but is not specifically intended or reflected in the design.

(*Id.* at 12, quoting U.S. Access Board, *Chapter 5: Passenger Loading Zones*, Guide to the ADA Accessibility Standards, available at https://www.access-board.gov/ada/guides/chapter-5-passenger-loading-zones.)  Defendant maintains the Hotel does not have an area that meets this definition, noting: "[t]here are no signs, markings or design features at the Hotel indicating a passenger loading zone, nor does Gastelum allege that any specific design features exist."  (*Id.* at 12-13.)  Defendant argues: "At most, it appears that Gastelum merely claims that because guests can be dropped off at the

10

1    front of the hotel, that means that the area in front of the Hotel must be a 'passenger loading zone.' But

2    that is an incorrect legal conclusion as a matter of law." (*Id.* at 13.) Thus, Defendant makes both a

3    facial attack and a factual attack related to the passenger loading zone and marked access aisle.

4         As the Court previously explained in addressing the initial complaint, a plaintiff must allege

5    facts to support a conclusion that a path is a "loading zone" within the meaning of the ADAAG, which

6    defines indicates passenger loading zones as areas "specifically designed or designated for passenger

7    loading." *Brooke v. Sai Ashish*, 2021 WL 4804220, at *8 (E.D. Cal. Oc. 14, 2021).  For example, the

8    Central District determined allegations were sufficient to support a conclusion that a hotel had a

9    "passenger loading zone" in *Brooke v. Treasure Mountain Holdings LLC,* 2022 WL 2286472 (C.D.

10   Cal. Apr. 7, 2022).  In *Treasure Mountain,* Brooke alleged that the hotel had "a passenger loading

11   zone 'directly in front of the lobby.'" *Id.*, 2022 WL 2286472, at *3.  Brooke also alleged "people park

12   in this area for a short period of time 'while checking in or loading luggage.'" *Id.*  Based upon these

13   allegations, the Central District concluded Brooke "plausibly alleges the Hotel provides a passenger

14   loading zone as defined in the ADA, in the area 'directly in front of the lobby.'" *Id.*

15        In contrast, in *Sai Ashish*, Brooke alleged the "hotel has a passenger loading zone because the

16   pickup and drop-off area directly outside the lobby is designed and intended as a loading zone." *Id.*,

17   2021 WL 4804220, at *9.  In addition, Brooke asserted the "hotel does not have an access aisle, thus

18   constituting a barrier to her access to the hotel lobby." *Id.*, 2021 WL 4804220, at *8.  The Court found

19   Brooke failed "to allege non-conclusory facts showing that the hotel has a passenger loading zone." *Id.*

20   Without such allegations, the Court determined Brooke "has not established that Defendant was

21   required to have an access aisle, and the absence of an ADAAG/ADA Standards violation precludes

22   Plaintiff's ADA claim." *Id.*

23        The allegations now before the Court are similar to the conclusory allegations found deficient

24   in *Sai Ashish.*  Gastelum alleges in the FAC that "[t]he area in front of the lobby is specifically

25   designed or designated for passenger loading." (Doc. 15 at 4.)  Gastelum also included a photograph

26   that he indicated "shows the passenger loading zone and [the] lack of a marked access isle (sic)." (*Id.*)

27   Opposing the pending motion, Gastelum contends: "Obviously most hotel entrances have common

28   design features indicating a passenger loading zones.  Equally obviously, the area where hotel guests

11

1  would typically utilize to drop off luggage requires a passenger to drop off luggage." (Doc. 18 at 8,

2  emphasis omitted.") Gastelum maintains that because there was not a marked access aisle, he has

3  identified a barrier under the ADA. (*Id.*)

4        Although Gastelum contends there is an area "in front of the lobby" that "is specifically

5  designed or designated for passenger loading," this language merely parrots the language of the U.S.

6  Access Board Guidelines indicating passenger loading zones are "only those areas that *are specifically*

7  *designed or designated* for passenger loading." Gastelum does not allege any facts supporting a

8  conclusion that the area was "designed" for passenger loading or "designated" with markings or other

9  signs for passenger loading. *See Sai Ashishi*, 2021 WL 4804220, at *9. Furthermore, though Gastelum

10 contends that "obviously" most hotels have areas that passengers use to drop off luggage, Gastelum

11 does not allege he observed such conduct in the area identified here. *Compare with Treasure*

12 *Mountain,* 2022 WL 2286472, at *3. Finally, the photograph provided by Gastelum—which he

13 indicates "shows the passenger loading zone and lack of a marked access isle (sic)" (Doc. 15 at 4)—

14 does not support such a conclusion, as the Court is unable to determine from the photograph whether

15 there is an accessible aisle or even vehicle access to the area depicted. *See Strojnik v. Four Sisters Inns,*

16 *Inc.,* 2019 WL 6700939 at *3 (C.D. Cal. Dec. 9, 2019) (photographs and captions were insufficient to

17 show how there are purported barriers and establish standing); *Strojnik v. HPTRI Corp*., 2020 WL

18 6827765 at *3 (D.Az. Nov. 20, 2020) ("the grainy photos of the alleged violations in the Complaint do

19 nothing to give him standing"). Thus, Gastelum fails to allege facts sufficient to support a conclusion

20 that the Hotel had a passenger loading zone, or that an access aisle was required under the ADAAG. It

21 follows that Gastelum is unable to establish standing based upon such a barrier.[1] *See Sai Ashish,* 2021

22 WL 4804220, at **8-9 (finding the plaintiff failed to establish a real or concrete injury based where

23 made only conclusory allegations concerning a passenger loading zone and failed to allege facts

24 sufficient to support a conclusion that the hotel was required to have an access aisle).

25                    b.    *Whether Gastelum encountered the identified barrier*

26        Even assuming Gastelum alleged facts sufficient to support a conclusion that the Hotel has a

27

28 _____

[1] Because the allegations are again insufficient, the Court declines to address evidence to support a factual attack made by
Defendants related to the existence of a passenger loading zone.

12

1   passenger loading zone and was required to have a marked access aisle, Gastelum fails to allege facts

2   sufficient to support a conclusion that this was a barrier *to him*.

3         Gastelum acknowledges in the complaint that "he drove up to the Hotel." (Doc. 15 at 5, ¶ 17)

4   There are no allegations that he used a wheelchair at any time while visiting the Hotel. As a result,

5   there are no allegations to support a conclusion that Gastelum personally encountered a barrier related

6   to the alleged the "passenger loading zone." *See, e.g., Strojnik v. Capitol Regency, LLC*, 2021 WL

7   1721682, at *5 (E.D. Cal. Apr. 9, 2021) ("plaintiff's failure to allege that he required wheelchair

8   assistance when he encountered these features"—which included alleged barriers related to a passenger

9   loading zone— was "fatal to his standing"), *adopted by* 2021 WL 2292665 (E.D. Cal. June 4, 2021)

10   (dismissing the action for lack of subject matter jurisdiction); *see also Strojnik v. WMH Enters. LLC*,

11   2021 WL 3511144, at *3 (D.Az. Aug. 10, 2021) (finding a plaintiff's allegations that he used a

12   wheelchair at times were insufficient to show he suffered a "concrete or particularized injury" related to

13   "the absence of markings in the passenger loading zone" when the plaintiff did not "allege he used a

14   wheelchair while visiting the hotel, or at any relevant time"). Consequently, the Court finds Gastelum

15   fails to establish standing based upon this alleged barrier.

16                  3.    Reach ranges

17         Gastelum alleges the "[r]each ranges for the toaster and iron were greater than 48 inches high."

18   (Doc. 15 at 7, ¶ 17(e).) Although Gastelum does not identify the provision of the AGAAG to which he

19   refers, it appears to be Section 308 which governs reach ranges for building and storage elements.

20   Importantly, however, Section 308 relates to "reach ranges" for individuals in a wheelchair, including

21   forward reach and side reach. *See Marquez v. Auto Club of S. Cal.*, 2022 WL 17185981, at *8 (C.D.

22   Cal. Mar. 15, 2022) (noting Section 308 includes "requirements for forward and side reach ranges for

23   building elements such as shelves, including height and depth requirements when that reach is

24   obstructed"); *see also Estrada v. Mirlan*, 2019 WL 8017736, at *3 n.5 (C.D. Cal. Oct. 16, 2019) (noting

25   reach ranges are defined based upon whether space "allows for forward or parallel approach by a

26   person in a wheelchair").

27         As discussed above, Gastelum does not assert that used a wheelchair at any time when he

28   visited the Hotel. Consequently, the facts alleged fail to support a conclusion that Gastelum suffered a

1  concrete injury for items being beyond the reach ranges specified.  *See Strojnik v. Bakersfield*

2  *Convention Hotel*, 2021 WL 274428 (E.D. Cal. Jan. 27, 2021) (finding the plaintiff failed to establish

3  standing for reach range violations where he alleged he was a wheelchair user, but did not allege he was

4  in a wheelchair when he visited the hotel or used one at any time during his visit), *adopted by* 2021 WL

5  677928 (E.D. Cal. Feb. 19, 2021) (dismissing the action); *see also Rutherford v. Econolodge,* 2019 WL

6  950329 at *4 (S.D. Cal. Feb. 27, 2019) ("it is not enough for [a plaintiff] simply to identify ADA

7  violations that could affect people with disabilities similar to his; he must allege an actual, concrete

8  injury to himself").

9            4.      Force required for doors

10  Gastelum identifies three doors at the Hotel that he asserts "required greater than 5 lbs of force

11  to open," including "[t]he door to the assigned room," an "internal door on [an] accessible route," and

12  "[t]he door on the accessible restroom in the pool area."  (Doc. 15 at 5-7, ¶ 17(b)-(d).)  In support of

13  this assertion, Gastelum includes photographs of a device near doorways.  However, he does not

14  provide any information concerning the device, and the amount of force is not legible in the

15  photographs.  (*See id.*)

16  Defendant contends Gastelum is unable to establish standing with these alleged barriers

17  because Gastelum cannot show the amount of force required was "a barrier to him, while using his

18  prosthesis and cane, as he did at the Hotel."  (Doc. 16-1 at 14.)  In addition, Defendant contends any

19  claim for ADA violations related to the unspecified door on the "accessible route" and in the pool area

20  fail "because the 2010 ADAAG § 404.2.9 only requires 5 lbs of force to open interior doors."  (*Id.*,

21  emphasis omitted.)

22            a.      *Exterior doors*

23  Notably, Gastelum does not oppose Defendant's assertions concerning the external doors on an

24  unidentified accessible route and the pool area.  (*See* Doc. 18 at 4-5, 8.)  Furthermore, in citing the

25  portions of the FAC to support his standing, Gastelum specifically omitted the paragraphs concerning

26  the doors other than the hotel room door.  (*See id.* at 4-5.)  Thus, it appears Gastelum concedes he is

27  unable to establish standing for any alleged violation related to these two doors.  Instead, Gastelum

28  directs the Court's attention only to the door for the "assigned room."  (*Id.* at 8, citing Doc. 15, ¶

1   17(b).)

2                   b.      Assigned room door

3          The ADAAG provides standards governing "[d]oors, doorways, and gates that are part of an

4   accessible route."  ADAAG § 404.1.  In addition, the ADAAG indicates that "[h]andles, pulls, latches,

5   locks, and other operable parts on doors and gates shall comply with 309.4."  *Id.* § 404.2.7.  That

6   provision, in turn, requires "operable parts" to be operable with only one hand, and require force of 5

7   pounds maximum to activate.  *Id.* § 309.4.

8          In the FAC, Gastelum alleges the force required to open his room door exceeded 5 pounds.

9   (Doc. 15 at 5, ¶ 17(b).)  Gastelum also asserted the door required two hands for operation, including

10  one hand to operate the handle and another to push the door open.  (Doc. 15 at 5, ¶ 17(b); *see also*

11  Doc. 7 at 6, ¶ 12(b) (explaining that "[w]hen the opening force is 5 lbs or less, as required, opening a

12  door with just one hand may be possible, but when the opening force is greater than 5 lbs, it requires

13  one hand to turn the handle and the other to push open the door").  These allegations are sufficient to

14  support a conclusion that the door did not comply with accessibility standards under the ADAAG and

15  related to Gastelum's disability while he used a cane.[2]

16                  5.      Conclusion on barriers

17         A plaintiff need only identify one barrier at a place of public accommodation to have Article

18  III standing.  *Doran*, 524 F.3d at 1047; *see also Strojnik v. Wickstrom Hosp. LLC*, 2020 WL 3840978,

19  at *4 (E.D. Cal. July 7, 2020) ("Plaintiff need adequately plead only one barrier to establish

20  standing").  Because the allegations in the FAC are sufficient to support a conclusion that Gastelum

21  encountered a barrier at the Hotel that related to his disability, the Court finds Gastelum carries the

22  burden to show standing under the ADA.

23      **E.     Standing for injunctive relief**

24         To establish standing for a claim of injunctive relief, as Gastelum seeks here, he "must

25  demonstrate a 'real and immediate threat of repeated injury' in the future."  *Chapman*, 631 F.3d at 946

26

27  ──────────────
    [2] Notably, the evidence submitted by Defendant does not address the force required to open the door to the room Gastelum
28  stayed in at the Hotel, and Defendant does not raise a factual attack upon the allegations related to the specific room door
    or argue the claim is moot. (*See generally* Doc. 16-1.)

                                                        15

1   (quoting *Fortyune v. Am. Multi-Cinema, Inc*., 364 F.3d 1075, 1081 (9th Cir. 2004)).  In other words,

2   there must be "a sufficient likelihood that he will again be wronged in a similar way."  *Fortyune*, 364

3   F.3d at 1081 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974); *City of Los Angeles v. Lyons*, 461

4   U.S. 95, 111 (1983)) (internal quotation marks omitted).  The Ninth Circuit identified two ways an

5   ADA plaintiff may demonstrate a likelihood of future harm: (1) the plaintiff can show "an intent to

6   return to a noncompliant accommodation" when he would be "likely to reencounter a discriminatory

7   architectural barrier" or (2) a plaintiff can show that "he is deterred from visiting a noncompliant public

8   accommodation because he has encountered barriers related to his disability there."  *Chapman*, 631

9   F.3d at 948-50; *see also Doran,* 524 F.3d at 1040 (discussing deterrence).  In the FAC, Gastelum

10  alleges he is "currently deterred" from visiting the Hotel, and thus seeks to establish standing based

11  upon deterrence.  (Doc. 15 at 8, ¶ 28.)

12       "To establish standing based on deterrence, an ADA plaintiff must demonstrate that he would

13  return but for the barrier."  *Feezor v. Sears, Roebuck & Co*., 608 F. App'x 476, 477 (9th Cir. 2015); *see*

14  *also Doran*, 524 F.3d at 1041 ("Allegations that a plaintiff has visited a public accommodation on a

15  prior occasion and is currently deterred from visiting that accommodation by accessibility barriers

16  establish that a plaintiff's injury is actual or imminent") (citing *Pickern v. Holiday Quality Foods Inc*.,

17  293 F.3d 1133, 1138 (9th Cir. 2002)). Conclusory allegations of deterrence, however, are insufficient.

18  *Feezor*, 608 Fed. App'x at 477; *see also Strojnik v. Bakersfield Convention Hotel I, LLC*, 436 F. Supp.

19  3d 1332, 1341 (E.D. Cal. 2020) ("conclusory assertions that an ADA plaintiff … is deterred from

20  returning to a place are insufficient").  A plaintiff must allege more, such as frequency of travel to a

21  region, to support a determination that he is deterred from a return due to the alleged barriers.  *See, e.g.,*

22  *Whitaker v. Ramon Bravo, Inc.,* 2021 WL 4133871, at *4 (N.D. Cal. Sept. 10, 2021).

23       Gastelum alleges that he "is often in the area where the Hotel is located," and "intended to

24  return to the hotel in the winter of 2021/2022."  (Doc. 15 at 8, ¶¶ 24-25.)  According to Gastelum, he

25  did return to Bakersfield in January 2022 "but declined to stay at the Hotel based on his knowledge that

26  the Hotel was not accessible."  (*Id*. at 8, ¶ 27.)  He contends he "is currently deterred from doing so

27  because of his knowledge of the existing barriers and his uncertainty about the existence of yet other

28  barriers on the site."  (*Id.*, ¶ 28.)  Defendant contends the allegations are insufficient to support standing

16

for injunctive relief.  (Doc. 16-1 at 24-25.)

Significantly, Gastelum has offered more than only conclusory statements concerning deterrence.  Gastelum alleges that he returned to the Bakersfield area after initiating this action but declined to stay at the Hotel because of his belief that the Hotel was inaccessible.  These allegations, though sparce, are sufficient to allege deterrence.  *See, e.g., Whitaker v. Ramon Bravo, Inc.,* 2021 WL 4133871, at *4 (N.D. Cal. Sept. 10, 2021) (finding a plaintiff sufficiently alleged imminent future injury based on allegations that he is an ADA tester who frequently travels to the Bay Area, including the Redwood City area where the restaurant was located); *see also Gastelum v. Parvarti Hospitality, Inc.*, 2022 WL 2812176, at *5 (N.D. Cal. July 18, 2022) (finding the plaintiff sufficiently alleged deterrence where the allegations included that he planned to return to the city, and did so in January 2022, but was deterred from staying at the hotel because of its alleged inaccessibility); *Wickstrom Hosp. LLC*, 2020 WL 3840978, at *5 (allegations of a specific trip cured "the previously conclusory nature of the allegation"); *Rutherford v. Kelly*, 2021 WL 488342, at *7 (S.D. Cal. Feb. 9, 2021) (status as an ADA tester and past visits were relevant to the inquiry for standing purposes).

### F.    Claim arising under state law

Gastelum also seeks to hold Defendant liable for violating California's Unruh Civil Rights Act. (Doc. 15 at 10).  In relevant part, the Unruh Act provides: "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their …disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). Notably, the Unruh Act also indicates that "[a] violation of the right of any individual under the Americans with Disabilities … shall also constitute a violation of this section."  Cal. Civ. Code § 51(f).

Defendant contends the Court should decline supplemental jurisdiction over the claim.  (Doc. 16-1 at 27-28.)  The Court may decline supplemental jurisdiction over a state law claim if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

17

1

2

                (4) in exceptional circumstances, there are other compelling reasons for
declining jurisdiction.

3  28 U.S.C. § 1367(c).  A court may decline to exercise supplemental jurisdiction under Section 1367(c)

4  "under any one of [the statute's] four provisions."  *San Pedro Hotel Co., Inc. v. City of L.A.*, 159 F.3d

5  470, 478-79 (9th Cir. 1998).  When dismissing a state-law claim pursuant to Section 1367(c)(1)-(3), the

6  court need not state its reason for dismissal. *Id.*  However, if a court declines to exercise supplemental

7  jurisdiction under Section 1367(c)(4), however, the court must "articulate why the circumstances of the

8  case are exceptional."  *Exec. Software N. Am., Inc. v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir.

9  1994).  The Ninth Circuit cautioned that declining supplemental jurisdiction based on Section

10  1367(c)(4) should be the exception, rather than the rule. *Id.* at 1558.

11                    1.       Whether novel or complex issues are raised

12          Defendant does not argue that Gastelum raises novel or complex issues with the Unruh Act

13  claim.  (*See* Doc. 16-1 at 27-28.)  Moreover, the Unruh Act provides that a violation under the ADA is

14  a violation of the Unruh Act. Cal. Civ. Code § 51(f).  "The state and federal claims are so intertwined

15  that it makes little sense to decline supplemental jurisdiction." *Moore*, 85 F.Supp. 3d at 1194.  Thus, the

16  Court finds the claim is not novel or complex, and this is not a basis to decline supplemental

17  jurisdiction over the claim.

18                    2.       Whether the state claim predominates

19          Defendant notes that monetary damages are available under the Unruh Act.  (Doc. 16-1 at 27.)

20  However, this Court and others in the Ninth Circuit have rejected the argument that a claim under the

21  Unruh Act predominates over a claim under the ADA simply because of the difference in available

22  remedies.  *See, e.g., Moore v. Dollar Tree Stores Inc.* 85 F.Supp.3d 1175, 1194 (E.D. Cal. 2015) ("the

23  mere fact that the state claims allow for the recovery of monetary damages, whereas the ADA provides

24  for injunctive relief only, does not compel the conclusion that the state claims 'substantially

25  predominate' over the federal claim"); *Castillo-Antonio v. Hernandez*, 2019 WL 2716289 at *7 (N.D.

26  Cal. June 28, 2019) ("even though the state-law claims provide for more comprehensive remedies, they

27  do not substantially predominate over the ADA claim because the proof required for both the state and

28  federal claims is nearly identical"); *Schoors v. Seaport Vill. Operating Co., LLC*, 2017 WL 1807954 at

1   *4 (S.D. Cal. May 5, 2017) (holding that although an Unruh Act claim offered more remedies, the

2   Unruh Act claim did not substantially predominate over the ADA claim). The burdens of proof for the

3   ADA and the Unruh Act are also same.  *Moore*, 85 F.Supp. 3d at 1194.  Furthermore, "[t]he Unruh

4   claim and the federal claim arise from the same nucleus of operating facts, have the same witnesses, the

5   same evidence, and the same parties."  (Doc. 37 at 17); *see also Schoors*, 2017 WL 1807954 at *4

6   (claims under the Unruh Act and ADA "involve identical alleged facts, witnesses, and evidence").

7   Thus, this factor does not support the Court declining supplemental jurisdiction.

8                          3.      Dismissal of claims over which the Court has original jurisdiction

9          As discussed above, Gastelum alleges facts sufficient to support a conclusion that he

10  encountered a barrier with the force required to open the hotel room door, which also related to his

11  disability due to his use of a cane.  Consequently, the ADA claim is not subject to dismissal for lack of

12  standing, and this is not a proper basis for the Court to decline supplemental jurisdiction.

13                         4.      Other compelling reasons

14         Defendant asserts, "The Ninth Circuit has recently held that the monetary component of an

15  Unruh Act claim and the heightened pleading requirements under state law justify declining

16  supplemental jurisdiction over the Unruh Act claim."  (Doc. 16-1 at 27, citing *Arroyo v. Rosas*, 19 F.4th

17  1202, 1214 (9th Cir. 2021).  Defendant indicates that the Ninth Circuit indicated "this case presents

18  'exceptional circumstances' within the meaning of § 1367(c)(4)."  (*Id.*)

19         Significantly, Defendant ignores the circumstances considered in *Arroyo* and the ultimate

20  holding of the Court.  The district judge granted summary judgment in favor of the plaintiff on the

21  ADA claim but declined supplemental jurisdiction over the Unruh Act finding "exceptional

22  circumstances" under Section 1367(c)(4).  *Arroyo*, 19 F.4th at 1204.  In declining supplemental

23  jurisdiction, "[t]he district court rested its decision squarely on the comity-based concerns that

24  California's policy objectives in this area were being wholly thwarted and its courts were being

25  deprived of their crucial role in carrying out the Legislature's reforms of the Unruh Act."  *Id.* at 1213.

26  The Court explained: "The *mechanism* by which that frustration of California's goals occurred was the

27  wholesale shifting of cases from state to federal court, and the district court therefore can hardly be

28  faulted for noting the federal-court burdens that resulted as a collateral consequence."  *Id.* (emphasis in

                                                      19

1  original). Nevertheless, the Ninth Circuit concluded judicial economy, convenience, fairness to

2  litigants, and comity "overwhelmingly favored retaining jurisdiction." *Id.* at 1214, citing *United Mine*

3  *Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).  For example, the Court explained that judicial

4  economy and convenience weighed in favor of retaining jurisdiction because "a violation of the ADA is

5  automatically, without more, a violation of the Unruh Act." *Id.*  Consequently, the Court held "the

6  district court abused its discretion in declining supplemental jurisdiction over Arroyo's Unruh Act

7  claim under § 1367(c)(4)." *Id.*, 19 F.4th at 1216-1217.

8        As discussed above, dismissal of Gastelum's ADA claim is not appropriate at this time.

9  Because Gastelum's claim under the ADA remains—and any violation of the ADA is automatically a

10  violation of the Unruh Act—judicial economy and convenience to the parties weigh in favor of

11  retaining jurisdiction.  Declining supplemental jurisdiction "would create the danger of multiple suits,"

12  an increase in litigation costs for the parties, and "wasted judicial resources." *Moore*, 85 F.Supp. 3d at

13  1194.  Therefore, the Court will retain supplemental jurisdiction at this time.

14  **VI.**    **Conclusion and Order**

15        For the reasons set forth above, the Court **ORDERS**:

16      1.     Defendant's motion to dismiss under Rule 12(b)(1) is **DENIED**.

17      2.     Defendant **SHALL** file an answer to the First Amended Complaint within thirty days of

18              the date of service of this order.

19

20  IT IS SO ORDERED.

21    Dated:   **January 24, 2023**

22                              UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28